# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**RANDOLPH COUNTY EMERGENCY SQUAD, INC.,**
**Employer Below, Petitioner**

**FILED**
**February 3, 2026**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**v.) No. 25-ICA-308**　　　(JCN: 2024029112)

**THOMAS CARLUCCI,**
**Claimant Below, Respondent**

## MEMORANDUM DECISION

Petitioner Randolph County Emergency Squad, Inc., ("Randolph") appeals the July 11, 2025, order of the Workers' Compensation Board of Review ("Board"). Respondent Thomas Carlucci filed a response.[1] Randolph filed a reply. The issue on appeal is whether the Board erred in reversing the claim administrator's order, which rejected the claim and denied temporary total disability ("TTD") benefits.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds there is error in the Board's decision but no substantial question of law. For the reasons set forth below, a memorandum decision affirming in part and reversing in part and remanding for further proceedings is appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure.

On October 4, 2024, Mr. Carlucci presented to Davis Medical Center Emergency Department for back pain that started that morning while he was transferring a patient. Mr. Carlucci reported that he twisted and felt something pop in his back; since then, he had severe pain in the lower back, left lumbar paraspinal area, left buttock, and down the left leg to the toes. Mr. Carlucci further reported that he had been vomiting secondary to severe pain and indicated that he had a history of left sided sciatica. A CT of the lumbar spine revealed no acute bony abnormality of the lumbar spine and diffuse disc bulge-protrusion at L5-S1 with facet arthrosis resulting in left neuroforaminal encroachment. The assessment was low back pain with left leg radiculopathy.

---

[1] Randolph is represented by James W. Heslep, Esq., and Steven K. Wellman, Esq. Mr. Carlucci is represented by Christopher J. Wallace, Esq.

Mr. Carlucci signed an Employees' and Physicians' Report of Occupational Injury or Disease ("WC-1") form on October 4, 2024, alleging that he injured his left lower back, hip, and leg on that date when lifting a patient on uneven terrain. Mr. Carlucci identified Chuck Wood as a witness. Medical personnel at Davis Medical Center completed the physician's section of the WC-1 form on October 4, 2024, and identified the lumbar spine as the body part injured. The medical provider indicated that the injury aggravated a prior injury/disease of lumbar degenerative disc disease, and the condition was a direct result of an occupational injury. Mr. Carlucci was advised to remain off work from October 4, 2024, to October 11, 2024.

According to an undated BrickStreet First Report of Injury, the injury was reported to BrickStreet by Heather Brown, a Deputy Director for Randolph. Mr. Carlucci reported an injury occurring on October 4, 2024, at the Clarksburg VA Hospital. Ms. Brown indicated that Mr. Carlucci verbally stated that he and his partner were at the Clarksburg VA and were transferring a patient on uneven ground. Mr. Carlucci reported that while he and his partner were walking backward, removing the cot with the patient, he stepped off the concrete/pavement pad and twisted his lower back on the left side. Ms. Brown indicated that Mr. Carlucci was treated at Davis Medical Center and also reported that there was no reason to question the injury and that an incident report was completed.

Prior to the injury at issue in this claim, Mr. Carlucci attended physical therapy beginning on April 22, 2021. Mr. Carlucci reported chronic low back pain. He noted that he worked for EMS and had multiple incidents of discomfort. The treatment diagnosis was low back pain. The recommended treatment plan was two times per week for eight weeks. On August 2, 2021, Mr. Carlucci was seen by Amanda Caplinger, NP-C, for complaints of severe lumbar spine pain. He reported lower back pain radiating down both legs, which started five days ago when he was using the bathroom. NP Caplinger noted that Mr. Carlucci injured his back two months prior while lifting a patient, and the pain at that time resolved on its own. The assessment was low back pain. An x-ray of Mr. Carlucci's lumbar spine was performed, revealing no acute fracture of the lumbar spine.

On September 6, 2022, Pendleton County Care documented a telephone visit Mr. Carlucci had with NP Caplinger. Mr. Carlucci reported left back and hip pain following a work incident when he stopped to catch a patient who was falling off a gurney. He described his pain as constant and achy, and stated that his entire leg went numb. He had sought chiropractic treatment and used Ibuprofen routinely with no improvement. An x-ray at the time was unremarkable. The assessment regarding the back was lumbar radiculopathy. On January 17, 2023, Mr. Carlucci was seen by NP Caplinger, and he indicated that he had fallen off a porch about a week prior and hurt his left shoulder. He further reported that he was having pain in the lower back and left hip, with numbness in the leg at times. NP Caplinger noted a history of a gunshot wound to the left leg where the bullet entered the left leg and exited at the medial knee a few days later, and an injury one

2

to two years prior when transporting a patient. The assessment was lumbago with sciatica, and Mr. Carlucci was given a referral for physical therapy.

On September 5, 2023, Mr. Carlucci reported to NP Caplinger that he was suffering from low back pain with radiation into the left buttock and down the left leg, and that the pain severely impacted his quality of life. Mr. Carlucci stated that he had completed physical therapy and seen a chiropractor and massage therapist with limited improvement. The assessment was lumbago with sciatica, and an MRI of the lumbar spine was ordered. On September 14, 2023, Mr. Carlucci underwent an MRI of the lumbar spine, revealing a small left paracentral disc herniation L5-S1 impressing on the left S1 nerve root.

Mr. Carlucci took physical therapy on January 9, 2024, and January 18, 2024. The treatment notes indicate Mr. Carlucci was diagnosed with L5-S1 nerve root impingement eight months previously, and that he complained of left sciatic pain and left lower extremity radicular symptoms. Mr. Carlucci's treatment diagnosis was lumbar radiculopathy.

Returning to the injury at issue in this claim, on October 11, 2024, Christopher Darlington, D.C., treated Mr. Carlucci. Mr. Carlucci reported that the week prior, he helped catch a patient and was having severe left sided low back pain and numbness in his left leg. Mr. Carlucci noted that he experienced similar pain for a year following a similar injury; however, since his October 4, 2024, injury, the pain was much worse. Mr. Carlucci indicated that he had been off work for two weeks since the injury, and it had not improved. Dr. Darlington assessed segmental and somatic dysfunction of the lumbar, sacral, and pelvic region; low back pain; lumbago with sciatica, left side; sprain of ligaments of lumbar spine; and muscle spasm of the back. Mr. Carlucci followed up with Dr. Darlington on October 14-18, 2024, and reported that his pain had decreased, but he still had some pain and some tingling in his left leg. Dr. Darlington issued a letter on October 18, 2024, taking Mr. Carlucci off work on October 19, 2024, and allowing him to return to work on October 21, 2024, depending on his symptoms.

Randolph submitted a copy of an undated, typed letter signed by Mr. Carlucci. The document appears to be a fax received on October 23, 2024, from Randolph County EMS. In the letter, addressed to "whom it may concern," Mr. Carlucci stated, "I am withdrawing my workers compensation claim on the injury that occurred while on duty."

On October 25, 2024, Mr. Carlucci returned to see Chiropractor Darlington and indicated that he lifted someone at work on October 23, 2024, and "it felt like someone ran a sword through his back" and he had been in pain since then. Mr. Carlucci described a burning pain down his leg into his big toe. Dr. Darlington stated that Mr. Carlucci showed a severe increase of his prior disc pain that caused spasms, hypertonicity, and restricted the ranges of motion. During follow-up visits on October 28, 2024, October 30, 2024, and October 31, 2024, Mr. Carlucci indicated that his level of pain had decreased.

The claim administrator issued an order dated October 28, 2024, closing the claim and not accepting it for payment because Mr. Carlucci withdrew his application. Mr. Carlucci protested this order.

On December 9, 2024, NP Caplinger treated Mr. Carlucci. Mr. Carlucci reported that he had been off work for about two months due to back pain beginning on October 4, 2024, while helping his partner lift a patient out of the ambulance. Mr. Carlucci stated that he lost his footing and twisted his back. NP Caplinger noted a prior similar work injury that occurred about two years prior and noted that the pain had compounded since that time and was present in the left lower back with radiation down the left hip and leg. Mr. Carlucci indicated that he was miserable, and the pain affected his daily life. Mr. Carlucci further reported that he had been seeing a chiropractor twice a week for one month or longer, with relief for a few days at a time. NP Caplinger ordered an MRI and a neurosurgical evaluation. The assessment was sciatica of the left side and severe left lumbosacral radiculopathy.

Gobind Singh, M.D., treated Mr. Carlucci for pain management on December 13, 2024. Dr. Singh noted that the previous MRI of the lumbar spine showed a small left-sided L5-S1 disc herniation impinging the left S1 nerve root. Dr. Singh indicated that the pain onset was in 2022 when Mr. Carlucci was working as a paramedic and lifted an obese patient into the ambulance and felt sudden pain that had been progressively bothersome. Mr. Carlucci reported left lower extremity numbness and tingling. Mr. Carlucci further reported that he had tried medication, physical therapy, aqua therapy, and home exercises. Dr. Singh assessed lumbar radiculopathy, lumbar disc herniation, lumbar disc disease, and left leg pain. Dr. Singh opined that, based on the history, examination, and imaging, the most likely underlying cause of the current pain was lumbar disc disease with left sided L5-S1 disc herniation with impingement of the left S1 nerve root. The treatment plan was for a transforaminal epidural steroid injection in the lumbar spine.

Mr. Carlucci underwent an MRI of his lumbar spine on December 27, 2024, revealing left sided disc herniation at L5-S1 with left S1 nerve root impingement. Mr. Carlucci returned to Dr. Singh's office on January 27, 2025, and reported that he had 95% ongoing pain relief following the recent injection as well as improvement in functioning. Mr. Carlucci stated that he was able to return to his baseline activity without pain and hoped to return to work soon.

On July 11, 2025, the Board reversed the claim administrator's order rejecting the claim. The Board found that Mr. Carlucci established that he sustained a lumbar spine injury resulting in lumbar radiculopathy as a result of the October 4, 2024, injury that occurred in the course of and resulting from his employment. Randolph now appeals the Board's order.

4

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
>
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Syl. Pt. 2, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024).

Randolph argues that Mr. Carlucci's current symptoms are related to his preexisting injury and prior symptoms, rather than a discrete new injury. Randolph also argues that the Board misapplied the Supreme Court of Appeals of West Virginia's ("SCAWV") holdings in *Gill v. City of Charleston*, 236 W. Va. 737, 783 S.E.2d 857 (2016) and *Moore v. ICG Tygart Valley, LLC,* 247 W. Va. 292, 879 S.E.2d 779 (2022).[2] Finally, Randolph argues that Mr. Carlucci withdrew his claim on October 23, 2024.

The SCAWV held, in *Gill*:

> A noncompensable preexisting injury may not be added as a compensable component of a claim for workers' compensation medical benefits merely because it may have been aggravated by a compensable injury. To the extent that the aggravation of a noncompensable preexisting injury results in a [discrete] new injury, that new injury may be found compensable.

*Gill* at 738, 783 S.E.2d at 858, syl. pt. 3.

---

[2] We note Randolph's argument on this issue, but find sufficient evidence to affirm the Board's order regardless of any misapplication of the holdings in *Gill* and *Moore*.

The SCAWV clarified its position in *Moore*, holding:

> A claimant's disability will be presumed to have resulted from the compensable injury if: (1) before the injury, the claimant's preexisting disease or condition was asymptomatic, and (2) following the injury, the symptoms of the disabling disease or condition appeared and continuously manifested themselves afterwards. There still must be sufficient medical evidence to show a causal relationship between the compensable injury and the disability, or the nature of the accident, combined with the other facts of the case, raises a natural inference of causation. This presumption is not conclusive; it may be rebutted by the employer.

*Moore* at 294, 879 S.E.2d at 781, syl. pt. 5.

Here, the Board noted Mr. Carlucci's prior medical records, analyzed the claim under the SCAWV's holdings in *Gill* and *Moore,* and found that Mr. Carlucci established that he suffered a discrete new lumbar spine injury in the course of and resulting from his employment on October 4, 2024. The Board found that Dr. Singh's opinion was not reliable or credible because he failed to consider or discuss the October 4, 2024, injury. The Board specifically found that Mr. Carlucci's description of his October 4, 2024, injury was credible and consistent with the medical records. Further, the Board noted that Mr. Carlucci described an "isolated fortuitous event" of popping and immediate pain following the incident that occurred on October 4, 2024. In regard to Mr. Carlucci's letter seeking to withdraw his claim dated October 23, 2024, the Board found that:

> The employer's argument that the claimant withdrew his claim, and thus, that should be the end of his claim is recognized. It is determined that the claimant is entitled to pursue his workers' compensation claim, which was properly and timely filed even if he initially indicated that he wanted to withdraw his claim. The claimant's protest to the subject Order denying the claim evidences his intent to pursue the claim and the compensability of the claim must be considered on the merits.

We agree with the Board's determination that Mr. Carlucci was entitled to pursue his claim, despite his letter indicating that he wished to withdraw the claim, given his clear and timely protest to the claim administrator's rejection of the claim. We note that the claim administrator's order rejecting this claim indicated that Mr. Carlucci could file a protest within 60 days of receipt of the order. Randolph has failed to explain the purpose of allowing such a protest if not for the resuscitation of the claim. We further note that Randolph cites no authority supporting its arguments on this matter.

6

Upon review, we conclude that the Board was not clearly wrong in finding that Mr. Carlucci established that he suffered an isolated fortuitous event and sustained a lumbar spine injury on October 4, 2024, in the course of and resulting from his employment. Further, we conclude that the Board was not clearly wrong in finding that Mr. Carlucci established with medical evidence that he was temporarily and totally disabled from October 4, 2024, to October 21, 2024, and thereafter, as substantiated with proper medical evidence. As set forth by the SCAWV, "[t]he 'clearly wrong' and the arbitrary and capricious' standards of review are deferential ones which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis." Syl. Pt. 3, *In re Queen*, 196 W. Va. 442, 473 S.E.2d 483 (1996). With this deferential standard of review in mind, we cannot conclude that the Board was clearly wrong in reversing the claim administrator's order, which rejected the claim.

Further, the Board specifically found Mr. Carlucci's description of his injury to be credible; thus, we will defer to the Board's credibility determinations. *See Martin v. Randolph Cnty. Bd. of Educ.*, 195 W. Va. 297, 306, 465 S.E.2d 399, 408 (1995) ("We cannot overlook the role that credibility places in factual determinations, a matter reserved exclusively for the trier of fact. We must defer to the ALJ's credibility determinations and inferences from the evidence . . . .").

However, we reverse the Board's finding that the claim should be compensable for lumbar radiculopathy. As is mentioned above, *Gill* holds that "[a] noncompensable preexisting injury may not be added as a compensable component of a claim for workers' compensation medical benefits merely because it may have been aggravated by a compensable injury." In this case, Mr. Carlucci was diagnosed with lumbar radiculopathy on September 6, 2022, by NP Caplinger and on January 9, 2024, and January 18, 2024, Mr. Carlcucci's physical therapist noted that Mr. Carlucci complained of left lower extremity radicular symptoms, and that his treating diagnosis was lumbar radiculopathy. Further, Mr. Carlcucci's medical records from before this injury indicate he complained of low back pain with left lower extremity radicular symptoms. According to his medical records after October 4, 2024, Mr. Carlucci had similar symptoms.[3] Therefore, pursuant to *Gill*, lumbar radiculopathy is an inappropriate diagnosis in this claim.

As set forth by the SCAWV, "[t]he 'clearly wrong' and the arbitrary and capricious' standards of review are deferential ones which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis." Syl. Pt. 3, *In re Queen*, 196 W. Va. 442, 473 S.E.2d 483 (1996). Here, we find that the Board was not

---

[3] We also note Mr. Carlucci's lumbar MRI taken on September 14, 2023, which revealed a small left paracentral disc herniation at L5-S1 impinging on the left S1 nerve root. The MRI report states that Mr. Carlucci reported low back pain that radiated to the left leg.

7

clearly wrong when it determined Mr. Carlucci sustained a compensable injury on October 4, 2024. There is adequate evidence that Mr. Carlucci sustained a definite, isolated, and fortuitous injury in the course of and as a result of his employment. However, the Board was clearly wrong when it ordered the claim compensable for lumbar radiculopathy. Before the October 4, 2024, injury, Mr. Carlucci complained of similar symptoms, and he was diagnosed with lumbar radiculopathy. *Gill* prohibits pre-existing conditions from being held compensable in subsequent workers' compensation claims. Therefore, we remand the issue of compensable conditions to the Board with instructions that is accept evidence regarding an appropriate compensable condition and issue a new order addressing the same.

Accordingly, we affirm in part and reverse in part the Board's July 11, 2025, order.

Affirmed in part and Reversed in part.


**ISSUED:** February 3, 2026

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Charles O. Lorensen
Judge S. Ryan White